Council, it's entirely up to you with the masks. If you're more comfortable arguing without it, please, please do so. And good morning to everybody. The first case we have is the Gaines case versus Superintendent Benner. Council. Good morning, Your Honor. Cheryl Stern for the appellee. Good morning, Counsel. Is it Ms. Pernaz? Yes, Your Honor. May it please the court. My name is Katherine Kernis. I'm an assistant district attorney in Northampton County, and I represent appellants. I would like to reserve three minutes for rebuttal. Appellants argue that the defendant appellee here was not deprived of his right to counsel pursuant to the Sixth Amendment of the United States Constitution. I'd first like to start with the strategic basics poem under the Strickland standard. The appellants argue that the findings and facts and conclusions of law of the district court were clearly erroneous in this matter with regard to trial counsel's undisputed testimony with regard to his trial strategy. The standard here is to presume that the conduct of trial counsel is part of a sound trial strategy and to be highly deferential. Let me interrupt you. I'm zooming in, but I want to ask you on this point about the standard review. What is the practical effect of accepting or denying your appeal of the denial of the motion for reconsideration? What difference does whether we recording in progress, whether we accept or deny that have on the ultimate decision here? Your Honor, I would argue that the district court's consideration of the record after the evidentiary hearing was incomplete and that it did not include the transcript from voir dire in this matter. And on that basis, I would ask, but does that but does that bind us? That's my question to you. If the does the fact that the district court didn't consider it mean we can't consider it unless we determined that it was an abuse of discretion to deny the motion for reconsideration. Do you understand what I'm getting at? Yes, Your Honor. We're bound to ignore the voir dire transcript unless we take up your reconsideration appeal. In this case, I do not believe you are. I do believe the district court abused its discretion in not granting our motion to supplement the record or to alter and amend judgment. But this was a transcript from the trial that is undisputed in its veracity. Let me interrupt here, too, if I may, please, because while the experience was admittedly long ago, I was a state trial court judge. And in fact, in my years on this court, I've run into this problem as I ran into it before. And that is the problem of gaps in a Pennsylvania state trial court record. It is not unusual. It has not been unusual historically. And might there be questions here as to responsibility for these gaps, what they were, when someone knew about them, and how a perfected record, how a more complete record could have been available to the district court. These seemed to me, from what we have before us right now, to largely be unanswered questions and questions that were not delved into by the district court. I understand and I agree with your honor. I think that in this case, I can only speak for myself. I cannot speak for the court. I cannot speak for the court reporter. However, I do. I understand. And maybe maybe the Commonwealth was was at no point in a position to speak for the court reporter. Do we even know what the court reporter did based on the record that's in front of us? There was an affidavit submitted. I had no I had no bearing. I did not coach the court reporter and what she should say. I did submit that affidavit to the district court. But I think in this case, there was a gap that exists in the record. And I think it's important, particularly with respect to. Well, of course, there's a gap. We know that. But but we're presented with a record with a gap. And should someone have known about that gap at an earlier point in time? It's interesting here that what has been presented to us is the filling of a gap which is pertinent to or relevant to an issue here. But what fills the gap arose at a point in time in the state trial court proceedings when you really wouldn't have expected that kind of information or maybe it's evidence here. That may be a separate question as to what we consider it. That is the interjection of the trial court judge, the common police court judge in the jury selection process. Would we have expected, would the Commonwealth have expected that they needed that portion of the transcript to answer that question? Your Honor, at the time of the evidentiary hearing, I can say that I was not aware that the voir dire transcript existed. And if I had been aware, I would have brought it to the court's attention at that time. I did not expect, based on not being part of the trial process, that the statements of the trial court were made during the voir dire transcript to the jury. And that he questioned them on their understanding of that principle of law and that they were not to take any adverse inference from the defendant. Well, in fact, the trial court judge didn't really question. He very pointedly interjected and made a robust statement as to what the jury that is eventually chosen could not consider, right? Yes, Your Honor, he did. He interrupted questioning by trial counsel of the potential jurors as to whether they would take defendant's right to remain silent against him. Let's assume we do consider that voir dire in our analysis. We bake it into the equation. Is that a substitute for the charge? Your Honor, I believe when you look at the totality of what happened here, that combined with the actual instructions that were given to the judge during, given by the judge during the trial, would eliminate the finding of prejudice here. In that the judge, the judge's instructions are deemed to be followed by the jurors. And that doesn't, that this is all of the jurors who are present during voir dire. But all of his instructions are under the law deemed to be followed. And he also gave numerous instructions throughout the trial. It's obviously important. Obviously important, Ms. Kernis. So I want to, with my colleagues to indulge me, I do want to hear your best argument for why, even if the district court didn't consider it, we can consider it. That's what I want to hear. Because if it's true, we can consider it whether the district court considered it or not. Your motion for reconsideration and its denial is irrelevant, isn't it? It is, Your Honor. I agree with Your Honor. What's your best argument for why we can consider it whether the district court considered it or not? Because it was part of the record on May 6, 2013, when it occurred. Just because we didn't have the transcript doesn't mean it didn't happen. And doesn't mean that the jurors didn't hear those statements by the trial court. And they didn't answer his question that they could be fair and impartial. And they wouldn't hold the defendant's choice to remain silent against him. I think that's very important. I think it's imperative in this matter. And I think it goes to the prejudice prong of the Strickland standard in this matter as well. Let's assume we can't consider it. And therefore, we don't consider it. All right. Where does that leave you? Do you need it? Your Honors, I think it's important because it completes the record here. I understand you think it's important, but make the assumption that I've just made. I think, as I thought at the time of the evidence you're hearing, that Appelli has still not proven prejudice in this matter. That's because of the depth of the jury instructions given by the trial court with regard to the presumption of innocence, the burden of proof being solely on the Commonwealth, and with respect to the defendant's right to remain innocent, as well as the overwhelming evidence of guilt. I'm sorry, Your Honor. Self-defense case. Wouldn't the jury expect to hear from the defendant when the defense is self-defense? Your Honor, in this case, a defendant did exercise his right to remain silent. And part of the consideration for that was that there was an eyewitness who saw the entire encounter, who was cross-examined by defense counsel. And there were actually two other eyewitnesses who viewed portions of the encounter between the defendant, Appelli, and the victim in this matter as well. There was one witness who viewed part of the encounter through his window and was able to see, after the first scuffle, he saw the victim come at the defendant with the stick. What does that have to do with whether or not the jury would expect to hear from the defense? Right? I mean, it's true there's evidence about self-defense. But the question really is, and you've made in your briefing comments about the Commonwealth didn't talk about his silence. Okay. So what? The question is whether the jury would expect and whether there would be prejudice from a failure to give an adverse inference instruction. So speak to that. How do you meet the argument that the district court accepted that they would have expected it and not giving it is just clearly deficient performance that's prejudicial? Your Honor, I think in this case, because there was evidence of self-defense to get that jury instruction, I think that the defendant used his constitutional right to remain silent. I also think that when you look at the jury instructions, even with regard to the jury instructions for self-defense, the judge at all times put the burden of proof on the Commonwealth. In addition, I would submit that the Vlaadier transcript, although I know that that may not be considered by the Honorable Judge. We're leaving that to the side, right? Let's get beyond that. The hypothetical is leave that to the side. And so I take it your argument is the instructions clearly put the burden of proof on the government, and that was enough. Am I hearing you right? Is that your pitch? No, that's not the entire pitch. I also, as you referenced, there was no improper reference by the Commonwealth with regard to the defendant not testifying. And I would also say that there was overwhelming evidence of guilt here. That should be a given, right? I'm sorry. I can't take credit for the fact that they didn't mention that he didn't testify. That is one of the considerations that's been used by the district court in determining whether there's prejudice, Your Honor. And I think that at the hearing, trial counsel testified that if he had heard an improper reference, he would have asked for a curative instruction by the court.  Well, let me get to what I, for one, think is the elephant in the room here, at least one of them. And that is that Judge Kerry, in his opinion, states that there was not a request by Mr. Sletvold for the no adverse inference instruction. Doesn't he say that? He does, Your Honor. There was a request for the no adverse inference instruction during the charge conference. Yes, there was. And it's clear. So any ineffectiveness here can't be on a failure to request the instruction. It was requested. The judge did not give it. That placed Mr. Sletvold, that placed trial counsel in a position that after there was no adverse inference instruction, he had a choice to make. Either I now raise with the trial court the fact that the requested instruction was not given. Please give it now. Or strategically, I guess it's best not to accentuate the point to people and those people being the jurors. And therefore, I won't ask him to do that. That's what it comes down to, doesn't it? It does, Your Honor. And his testimony with that regard was very clear. He did request it. So if there was error here that rises to ineffectiveness, it has to be the choice he made on the spot after the instruction was given. Yes, Your Honor. And he testified at length that the charge that the judge gave was very lengthy, that he wanted to emphasize the lesser forms of murder and manslaughter, that he wanted to focus on the self-defense justification aspect of the charge. And he also said that he didn't want to draw attention to his client's exercise of his constitutional right to remain silent by having that be the last instruction the jury heard. I would point out that because he did request the instruction during the charging conference, I think in this case there was a clearly erroneous finding of fact made by the district judge. And in that respect, his credibility determinations with respect to Mr. Sletfold's testimony are also in error, drawing into question his conclusions of law as well with regard to his... All of his credibility determinations as to Mr. Sletfold? Didn't he make a determination that goes to the choice made by Mr. Sletfold here? He did. But one of the considerations he took into account, Your Honor, was that Mr. Sletfold did not request the instruction during the charging conference? Yes, I raised that, I know. But my point is that you're not suggesting, are you, that the district judge did not believe Mr. Sletfold when he stated, when he testified that he had a strategic or perhaps more appropriately tactical decision to make here? I think one of the considerations that the district court made in determining that he was ineffective, that Mr. Sletfold was ineffective, was that he didn't request it during the charging conference. And I know that that was cited too in the district court's decisions multiple times as a reason for... We now know from the record that that's wrong. Yes. I'm going further. I'm going further down the track here to the point in time where you agree ineffectiveness, well known, has to come down to the choice the trial counsel made after the instructions were given to the judge. Yes. Right? He had two choices. He made one or the other. And doesn't Judge Kearney, in his opinion, acknowledge that that was a tactical decision or a strategic decision, probably the word that was used, that was made by Mr. Sletfold? Yes. And I think that being highly deferential to Mr. Sletfold, having defended a man against a murder charge, I think that he made a decision that he thought was in the best interest of his client and would give his client the best chance at getting a third degree murder or a lesser form of manslaughter conviction rather than... Don't you move, Ms. Kernis, from factual findings then to legal principles? Once the district court acknowledges that there's been a tactical or strategic decision made, then you're no longer talking about a factual issue. You're talking about what the legal consequences that flow from a tactical or strategic decision are. Is that right? Yes, Your Honor. The determination would be that whether counsel's actions were objectively reasonable, and they were, in my opinion, they were reasonable in this matter because of the reasons that he described at the evidentiary hearing. And I don't believe that the appellee here was deprived of his right to counsel for those reasons. And I would like to finish up if I have time remaining. Why don't you wrap up real quickly because you do have rebuttal time. Thank you, Your Honor. I would ask that the district court's decision be reversed. I would ask it for multiple reasons. First, because there should not have been a finding of a lack of strategic basis here, and also because the finding of prejudice was an error. I would ask that the district court's decision granting relief in part be reversed and that the judgment of sentence from May 9, 2013 be reinstated. Thank you, counsel. Thank you, Your Honor. We'll see you again on rebuttal. Ms. Sturm, how are you? I'm sorry, you're on mute, Ms. Sturm. Can you hear me now? We hear you now. Ms. Sturm, would you mind starting with the line of questioning Judge Smith had about the opinion and the suggestion that a charge was not requested at the charging conference? I'm sorry, Your Honor. What exactly are you asking me to address? Well, the district court, several times in its opinion, noted that a charge was not requested during the charging conference. That's incorrect, right? I didn't find it in the record, Your Honor. You didn't see in the record where the trial court said before the trial directly to Mr. Gaines, hey, I'm going to be asking about whether you understand your right not to testify and then asking Gaines's trial counsel expressly, are you going to ask for an adverse inference instruction? And counsel said, yes, that's at the joint appendix at 570. And then the court confirming later, I'm going to give that instruction. And then later during the colloquy, the court reminding Gaines that his counsel wishes the court to give an adverse inference instruction. That's at JA at 628. And later at the charging conference, the court again confirming that Gaines's trial counsel wanted a no adverse inference instruction. That's at JA 680. There's at least three or four times in the record where there is an exchange that shows trial counsel asking and the trial court acknowledging that there was to be an adverse inference instruction. At least three or four times. You didn't see that? I do not dispute that, Your Honor. I didn't see it during when the judge says I'm convening the charging conference now. I didn't see that in the charging conference. Well, let's assume it's there. Let's assume it's there. What do we make of Judge Carney's opinion in light of that? I think the ineffective assistance of the counsel occurs when the judge did not give the instruction to the jury. And then Mr. Slightfold has it. What he thinks is his decision to make. But I would call the court's attention to Commonwealth v. Thompson. Well, before you get to citing a specific case and you're about to cite a state court case, do you agree then with the focus that I was attempting to draw here? And that is that assuming, since you don't seem to be aware of the record demonstrating that there was a request for the no adverse inference instruction, assuming that it was given, that the focus then becomes what Mr. Slightfold did or did not do after the common police court judge instructed the jury. Yes, Your Honor. But if I may finish my reference to Thompson, which is a Pennsylvania Supreme Court case from 1996. You know what? You could get to that later, Ms. Sturm. But I think what you're hearing from us is we're not so interested in what you think of the Thompson case from the Commonwealth. We're interested in what the record reflects. And the question being put to you by Judge Smith, and which I'm interested in hearing too, is, if the record shows that the request was made and the trial court acknowledged that it was made, and that in fact the trial court gave something like that instruction during voir dire, if the record shows all that, then how can the district court's opinion, which hinges on the assertion that no request was made and no instruction given, how can that stand? How can the decision stand? Because the importance is not whether the request was made, but whether the judge gave the instruction and what happened after the judge failed to give the instruction. This isn't an ineffectiveness of judicial discretion. This has to do with ineffectiveness of what counsel did or didn't do. Right. And counsel did not protect Mr. Gaines's right to have that instruction heard by the jury. And according to Pennsylvania law, it is not the attorney's decision. Where did the failure occur, Ms. Sturm? Where did the failure occur? What is the point at which you say that was deficient performance? To allow the jury to begin deliberations without a specific no adverse inference instruction in their mind. So when you say in their mind. So there was, you're not asserting that the adverse inference instruction was never given, are you? Because the record shows it was given during the voir dire, right? I don't think that counts as a jury instruction, Your Honor. Why not? Because as the judge said in Mr. Gaines's decision, these were 12 citizens. There was not an impanel jury at that point. There was no jury sworn. So the fact that the jurors were all there, the ones who were sworn were sitting there and heard it, that doesn't matter. No. Your assertion is, I take it, even if we accept and review the voir dire, which the district court didn't do, that that's irrelevant. It doesn't matter. As a legal matter, you're saying it doesn't matter because they weren't sworn. Immaterial and irrelevant. Because they weren't sworn. That's your legal position. No, because that's part of my position. The additional position I'm taking is when the judge began his jury instructions, he said more than the commonwealth has quoted in its brief. He said members of the jury, now that all the evidence has been presented and the attorneys for both sides have made their closing arguments, it becomes my duty to instruct you in the law, which will apply to the facts as you find them reaching a verdict. And then he says the charge I'm about to give you is very important. It's a law in which you will rely. It's all standard. Yeah, this is boilerplate. This is boilerplate. How does this undercut the fact that they heard during voir dire you can't take silence against the defendant? Because the judge goes on to say, as I said, you will apply only the law in which I instruct you. You will not apply any other law which any of you know or think you know. He's saying focus on the instructions I'm giving you today. It's not boilerplate to this jury, Your Honor. They're listening to every word. Is the motion for reconsideration crucial here, the fact that it was denied, or can we look at the voir dire regardless? I think Judge Kearney's decision is entitled to the standard of review announced in Blunt v. Lower Marion School District 767 Fed Third 247, 3rd Circuit 2014. Which says it's an abuse of discretion if the district court's decision rests upon clearly around the assignments of fact, errant conclusions of law, or improper application of the law to the fact. Okay. I understand the standard of review for a motion for reconsideration. What I'm asking you is, because the district court didn't review the voir dire, are we bound to ignore it ourselves unless we consider whether the motion for reconsideration was wrongly or rightly denied? Do you understand what I'm trying to ask you? I'm asking you a strictly procedural law question. Yes. I would say, Your Honor, have to first decide whether procedurally this transcript can be considered and whether Judge Kearney abused discretion in denying the 59 motion. Well, let's assume that we cannot and therefore do not look at the transcript that was eventually prepared of the voir dire proceedings. Let's assume we don't have it before us. You were about to tell us what Commonwealth v. Thompson held, and I think the panel knows what Commonwealth v. Thompson held. I don't think, frankly, speaking for myself, it helps you here. It says what it says, and that is that there's an entitlement to the no adverse inference instruction if it's timely requested. And it seems that we now know it was timely requested and that Judge Kearney was wrong in saying that it was not. But interestingly, the Pennsylvania courts have also said, in fact, the Pennsylvania Supreme Court has also said that a judge cannot give the instruction over a defendant's objection. That's Commonwealth v. Edwards. So apparently the giving of the instruction is not so absolutely compelling that it is some kind of structural error, if you will. I resort to that term for lack of any better one right now, where the instruction is not given. It's up to the defendant. Defendant through counsel made the choice. It was the judge's error, it seems, not to have given the requested instruction. So we then end up with counsel, and I think you've agreed here that it was counsel's decision, object or don't object at the end of the instruction. Request the instruction then or let it pass out of fear that it will accentuate the fact that the defendant didn't take the stand. Have you not agreed with that so far as the focus of our inquiry? No, I haven't, Your Honor. I'm trying to get to the holding in Thompson, which says, from this day forward, a no adverse inference instruction shall be given absent and expressed on the record colloquially by the defendant waiving the charge. So I do not agree with the attorney's choice to not request the adverse inference instruction. All right, so not requesting it at that juncture, at that point in trial, is what you consider the ineffectiveness here. Since he did, in fact, we can see from the record, make the request for the instruction. Correct. Are you aware of the fact that there is considerable literature, at least out there, and I think some cases, although I don't have them at my fingertips, which support the notion that it's rarely ineffective to fail to request the no adverse inference instruction. Now, that probably wouldn't be the case in Pennsylvania. But at root, what has been expressed as a concern here is that the instruction may indeed draw attention to the failure of the defendant to take the stand. So there is hardly anything in the nature of unanimity out there that there is automatically some damage that inures to the defendant in the defendant's case if the instruction is not given. Your Honor, that is a specious rationale for failing to. Well, you can tell McCormick on evidence that. Ms. Drummond, let me ask you about the opening instructions. Now, the jury is in the box, and the judge is speaking to them. And at page 305 of the appendix, the judge says, please understand the defendant has no obligation to offer evidence. What do we make of that statement in light of this case? And it omits the no adverse inference. He's telling the jury. Anyway, but he didn't tell them they could not draw an adverse inference from the defendant's failure to testify. And in this case, Your Honor, there was no case put on by the defense after the Commonwealth rested. It couldn't help but escape, couldn't escape the jury's attention that Mr. Gaines did not testify. Why wouldn't they be asking themselves when they have a whole range of degrees of guilt to consider anywhere from first degree to voluntary manslaughter or self-defense? Why didn't Mr. Gaines say whether he had malice? It could always be the case, couldn't it, Ms. Sturm, that a jury could be thinking about that? I mean, is the position you're taking that it can never be within professional competence for an attorney to say, you know what, it's not good to get that instruction right now? That the no adverse inference instruction has to be given or it is necessarily deficient performance? That's your take on it? No set of circumstances could occur where it could be rational for an attorney to say, that's not in my client's interest. Your Honor, I'm arguing this case. And in this case, it was irrational because there was no defense put on not actually witnessing what was called. Okay, once you say that, once you say it's this case and we're thrown into the facts, then we have to, do we not, accept the fact that in this case, the factual record is an instruction was requested. It was requested at the charge conference. That's appendix 680. And it wasn't given. And by the time it wasn't given, the attorney swears, I thought it was not in my client's interest to draw attention to the fact that he hadn't testified. Those are the facts in front of us. Now, the district court was mistaken about those facts, but those are the facts in front of us, are they not? The only thing the district court was mistaken about was whether it was requested at the charge conference. Well, that's the whole of the district court's underpinning for its decision is that it wasn't requested. That's why Judge Kearney said, this is problematic. It was never asked for. And I don't really think I've given much credence to his assertion, Spetbold's decisions, after the fact, his explanations after the fact, because it wasn't asked for to begin with. All that factual underpinning is false. Given that circumstance, how can Judge Kearney's decision stand? Because the ineffective assistance of counsel occurred when the judge knew that Mr. Gaines wanted the instruction given. He didn't give the instruction. He asked Mr. Spetbold, is there anything else you want me to say to the jury? And Spetbold said no. Under the circumstances of this case, where the Commonwealth had one witness, Mr. Gaines did not take the stand. And Judge Kearney said the Commonwealth's case on first-degree murder was not strong versus third-degree murder, that this defendant was prejudiced by his attorney's conduct. I got you. Thank you very much, counsel. Thank you. Thank you. Your Honors, I would like to briefly address the motion to supplement the record again and circle back to that issue. I think in this case, although the motion was made to the district court, it could have been made at this level as well, in that there could have been a motion to supplement filed with Your Honors in order to ensure that the record before you was complete. And the transcript from Vordier is imperative in that it goes to a finding of no prejudice in this matter. I also would submit to Your Honors that the judge's statements at the beginning of his final jury charge were that he wanted the jurors to consider the instructions as given by him and not some ideas that they might have of the law that are separate from his instructions. And that includes all of the instructions given by the trial court. It includes if a curative instruction had been requested, it would have included that instruction. It would have included his opening instructions. And it certainly would have included his instructions that he gave during Vordier when he told the members of the jury selection panel that they could not consider the defendant's choice to not testify and hold that against him at trial. But they had to presume that he was innocent. Ms. Kernis, would you speak to the legal assertion that Ms. Sturm has made that because the panel was not sworn, it wasn't a sworn jury at that point, that Vordier comment from the judge, that statement from the judge was not of legal effect, doesn't count as an instruction. And that the later instructions given would have directed the jury away from that. Your Honor, I disagree with that point. I would submit to you that that wasn't an instruction, that there's case law from the Eastern District with regard to the instructions given by the trial court during Vordier going against a finding of prejudice. Specifically, I would point to the Young v. Foligno case that the district court referred to in its decision, as well as the Howard v. Horn case in which the judge's instructions given during Vordier were expressly considered by those judges in finding that there was no prejudice. I'd also point out that there was, in addition to my view that there was no prejudice here, there was a strategic basis made by the trial attorney as well. But there was also strong evidence to support first degree murder here. I disagree that it was weak evidence. I think here there was testimony from an eyewitness who viewed the entire murder. There was also strong evidence of consciousness of guilt and that the defendant fled from the scene and he hid the murder weapon in a backyard that was found during a July 4th barbecue. There was also forensic DNA evidence linking the defendant to the murder of the victim, as well as expert medical testimony that there were five deep stab wounds here, including a wound to the femoral artery that completely severed it and caused the victim to die. I would ask that the district court's decision be reversed and that the judgment of sentence be reinstated. There's an issue here that one might characterize as a judicial policy issue, and it implicates both the interest of the state courts and the interest of this court. And I suggested this problem early in the argument, and that is the condition of the record from a state court proceeding that eventually reaches the federal courts in this case. In the first instance, the district court, all of perhaps all of what we had before us could have been obviated if a more complete record had been made available to the district court at an earlier time. And I cast no aspersions on anyone, because frankly, at this point in time, I don't know who was responsible even under even under the state rules of procedure, which I've taken a quick look at in recent weeks with respect to this case. But I raise it because Judge Becker, as chief judge, was very concerned about this problem some years ago. He raised it with the state court system. And you don't represent the Supreme Court or the state court system. You represent the Commonwealth and the district attorney's office of your county. But I just would suggest that you take it back to your office as a matter of policy. This is far from the oldest state court case I've seen reach us on habeas. And yet there is a gap, a significant gap in this record, highly relevant to this appeal. And it's something that I think behooves our court to perhaps look at once again in our dealings with the Commonwealth of Pennsylvania and especially with the Supreme Court of Pennsylvania to assure that we're getting complete records. And for the purposes of your office, I think you need to look at whose obligation is it to see that a complete record gets to us. And all defense counsel should be looking at that as well. I raise it simply because I've seen it so many times over the years. I agree with you, your honor. Thank you. Thank you, counsel. Thank you, your honors. Thank you, counsel. And we will take this matter under review.